IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PRITCHARD ELECTRIC COMPANY, INC.,
a West Virginia corporation,

                Plaintiff,

v.                                CIVIL ACTION NO. 3:04-0057

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 317,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are the parties' cross-motions for summary judgment. For the following reasons, the motion of the defendant is **GRANTED** and the motion of the plaintiff is **DENIED**.

**Background**

This case centers on the handling of a grievance arising from an employer's dismissal of a member of the International Brotherhood of Electrical Workers, Local 317. The employer, the plaintiff Pritchard Electric Company, Inc., is a signatory to two collective bargaining agreements: a national agreement, the General Presidents' Project Maintenance Agreement, and a local agreement, called the Inside Agreement. The national agreement covers ongoing maintenance, repair, renovation and replacement work in plants and other facilities. The local agreement deals more specifically with terms and conditions of employment in the area.

Each agreement outlines a procedure for handling a grievance. Under the national agreement, the procedure follows four steps. The grievance is first addressed by the employee and/or an on-site union representative and the employee's staff supervisor. Second, it is addressed by an international union representative, a local union representative and the contractor's labor relations manager. Third, it is addressed by the General Presidents' Committee. Finally, the parties apply to the U.S. Mediation and Conciliation Service and/or American Arbitration Association. The findings of the arbitrator are binding on both parties. Under the local agreement, a grievance involving an apprentice is first considered by the Joint Apprenticeship and Training Committee. If that committee cannot resolve the issue, it is referred to the Labor-Management Committee and finally to the Council on Industrial Relations.

In this case, the union member, Jonathan Daniels, was an apprentice electrician who was working for Pritchard Electric. Pritchard terminated Mr. Daniels on July 25, 2003, and the union initiated a grievance on his behalf under the terms of the national agreement. The grievance proceeded through step two of the process. The grievance did not proceed to the third step, a hearing before the General Presidents' Committee, after the committee administrator sent a letter informing the parties that the grievance was improperly before the committee. The relevant part of the letter stated: "It has been the policy of this committee NOT to hear grievance cases involving apprentices without first exhausting all measures through the local Joint Apprenticeship & Training Committee. In most agreements, the local JATC handles all matters of apprenticeship." (Emphasis in original.) In a handwritten note on a copy of the letter, Larry Sheets of Pritchard Electric wrote, "Thanks Giz. I agree with this letter."

Despite the plaintiff's objection and insistence that the matter was governed by the national agreement and therefore was properly before the committee under step three of the grievance procedure, the parties switched course and the local agreement's grievance process began. The first two steps of the procedure under the local agreement resulted in deadlocks. At this point, the plaintiff initiated this action, seeking a declaratory judgment that the national agreement controlled the grievance process and an injunction preventing the matter from proceeding to the Council on Industrial Relations, the final step under the local agreement. This Court denied the plaintiff's motion for a preliminary injunction and the grievance proceeded to the Council on Industrial Relations. The Council ruled in favor of Mr. Daniels and instructed Pritchard to pay him 40 hours' wages and benefits, accept him for employment the next time he was referred or assigned by the Joint Apprenticeship Trade Council and make a good faith effort to have him removed from the "banished from employment" list at Marathon/Ashland Petroleum. The plaintiff maintains its objection that the national agreement dictated the proper jurisdiction over this matter and has not implemented the Council's decision.

The parties now move for summary judgment, the plaintiff seeking a declaratory judgment compelling the parties to process the grievance under the terms of the national agreement and the defendant seeking enforcement of the decision of the Council on Industrial Relations.

### Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence

and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## **Analysis**

The parties agree that no genuine issues of material fact remain and that the Court should resolve this matter on summary judgment. The defendant argues that the outcome rests on whether the parties agreed to arbitrate, and more specifically whether the plaintiff agreed to process the grievance under the terms of the local agreement. The defendant contends that the handwritten note on the letter from the General Presidents' Committee and the plaintiff's participation in the process demonstrate acquiescence to the terms of the local agreement. Consequently, the defendant argues, the plaintiff is bound by its contractual obligations to follow the decision of the Council on Industrial Relations. The plaintiff disputes that it agreed to the process under the local contract, emphasizing

that it participated only after objecting to jurisdiction under that contract. The plaintiff concedes, however, that if the local agreement contains the proper mechanism for handling the grievance then the decision of the Council on Industrial Relations is binding. There is no question that the parties agreed to arbitration of disputes. They have such an agreement under two separate labor contracts. It is that situation that created the dispute and that must be resolved. The outcome, then, rests on the Court's determination of which collective bargaining agreement should control the grievance.

The limited scope of this inquiry falls within the judiciary's narrow role in labor disputes. "Where a dispute is concededly arbitrable and the only question is which of two grievance procedures governs, the legal issue properly may be resolved by the court." *J.D. Steel Co., Inc. v. Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers*, 709 F.2d 1328, 1330 (9th Cir.1983). Courts that have dealt with this question have looked to the language of the agreements to determine which procedure should govern the central issue in dispute. *Id.* at 1330-31. *See also Local 675 of the United Assoc. of Journeymen and Apprentice Plumbers & Pipe Fitters v. Honeywell, Inc.*, 652 F.2d 1361 (9th Cir.1981), *United Ass'n Local No. 725 of Miami, Fla. v. Honeywell Inc.*, 607 F.2d 659 (5th Cir. 1979). Although each agreement may be read to apply to certain aspects of the case, the focus should be on the primary dispute. "A party may not avoid a grievance procedure which covers the central and primary issue in a dispute by resort to a grievance procedure in a second contract which bears upon the essential controversy in only a derivative or collateral way." *J.D. Steel*, 709 F.2d at 1331.

Pritchard argues that the national agreement must control because it covers maintenance work, which was the kind of work Mr. Daniels was performing. Nothing in the local agreement, however, indicates that it does not also apply to maintenance work. Pritchard contends that the

grievance process in the local agreement would apply only to issues involving an employee performing the type of work not expressly covered by the national agreement, in this case, for example, work involving new construction. But the dispute in this case does not involve just any employee; it involves an apprentice. In fact, if Mr. Daniels were not an apprentice, there would be no dispute, because the General Presidents' Committee would not have declined to hear the case. Therefore, the primary issue in dispute is which procedure is proper for handling the grievance of an apprentice.

Both parties place too much emphasis on the meaning of the letter from the General Presidents' Committee and Pritchard's handwritten note on the letter. The language of the agreements, not the letter, must control the outcome. Such a letter could shed light on the understanding of those involved as to the appropriate process, but the primary effect of this letter is to show the confusion over how to handle a grievance involving an apprentice. Pritchard emphasizes that the letter does not state that the General Presidents' Committee would never consider the Daniels grievance, but that Joint Apprenticeship and Training Committee measures should be exhausted first. The union points to the letter's statement that "[i]n most agreements, the local JATC handles all matters of apprenticeship" as evidence that the General Presidents' Committee should not be involved in this grievance. Although each of these interpretations can reasonably be drawn from the letter, together they establish the letter's ambiguity and the need to draw final conclusions from the bargained-for terms of the parties' contracts. Further, it would be inappropriate for an arbitration panel to determine the scope of its own jurisdiction. *See, e.g., AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651 (1986).

The Court, then, must look to the agreements themselves to determine which process should govern a grievance involving an apprentice. Neither agreement contains a general provision that dictates how the two contracts should work together. In fact, each agreement contains very limited references to the other. One such reference in the national agreement is a provision dealing with efficiency which establishes that no rules, customs or practices that limit production or increase working time will be allowed. (Art. II, § 1(L).) This provision includes an instruction for the local business representative to inform craftsmen working on General Presidents' Agreement projects that the terms and conditions of local collective bargaining agreements do not apply. Although that on its own might suggest that the national agreement should take precedence, a close reading of the provision indicates that it is limited to terms in the local agreement related to situations that might restrict the amount of work an employee should be required to perform or limit the use of particular tools or labor-saving devices.

In the absence of a general instruction governing conflicts between the two agreements, the Court must look to the provisions of each contract pertaining to the central dispute. The local agreement, in Article V, deals extensively with matters of apprenticeship. This article covers nearly four full pages of the 31-page agreement. The article establishes apprenticeship standards and requires the formation of a local Joint Apprenticeship and Training Committee. On the issue of grievances, the article provides that "[a]ny issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve." (§ 5.03.) That section then outlines the grievance procedure, as set forth above. The national agreement, by contrast, provides virtually no reference to apprenticeship matters, with the notable exception of Article XII, § 9. That section states: "Any employer working under the GPA will comply with all national

apprenticeship standards established by the Joint Apprenticeship Training Committee." The contract does not define the precise scope of this instruction. Article XII deals largely with wages, but also addresses procedures for changes in working conditions and implementation of new projects or policy changes. The simple, straightforward language of Section 9 does not suggest an intent to limit an employer's obligation to abide by apprenticeship standards to wage issues. This section, combined with the detailed apprenticeship provisions in the local agreement – including a specific grievance procedure for apprentices – and the virtual lack of reference to apprenticeship in the national agreement compel the conclusion that the local agreement must control the grievance process for apprentices. As that is the central issue in this dispute, the procedure dictated by the local agreement should apply to the Daniels grievance.

This case presents the unusual situation where the grievance was initiated under one contract's procedure before being shifted to and resolved under another procedure, but the fact remains that the grievance has been fully addressed under the local agreement. Although the plaintiff raised an argument about the timeliness of the defendant's grievance under the local procedure, the Court has no authority to consider that claim. For the Court to review such an aspect of a case that has been considered to its conclusion would effectively be a decision on the merits of an arbitration award, which is outside the scope of permissible judicial review. *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Further, in its motion for summary judgment, the plaintiff conceded that if the proper procedure was found in the local agreement, the decision should be enforced (p. 10). Because the local agreement controls grievance procedures for apprentices, the decision of the Council on Industrial Relations in favor of the union is binding on the parties.

**Conclusion**

For the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** and the plaintiff's motion is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented parties.

ENTER: April 21, 2005

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE